IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBRA A. PRILL,

                     Plaintiff,

        v.

ANDREW M. SAUL,
Commissioner of Social Security,

                     Defendant.

OPINION AND ORDER

19-cv-977-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Debra A. Prill is seeking review of a final decision by defendant Andrew M. Saul, Commissioner of Social Security, denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g).  The administrative law judge (ALJ) hearing the case found that, although plaintiff had severe physical impairments, she retained the residual functional capacity to perform medium work in the national economy, with specified exceptions.  Plaintiff contends that the ALJ erred in evaluating plaintiff's subjective symptoms and the medical opinions in the record.  For the reasons that follow, I conclude that the ALJ's judgment is well supported.  Accordingly, I will affirm the commissioner's decision.

      The following facts are drawn from the administrative record (AR).

1

FACTS

A. <u>Background</u>

Plaintiff filed for benefits in August 2014, the same month she retired from the Eau Claire County Highway Department, where she had worked as a quad axial dump truck driver and laborer for 29 years.  The work she did in those positions included using a jackhammer, lifting up to 75 pounds, landscaping, and doing janitorial work, and  required twisting, bending and squatting.

In the course of her employment, plaintiff experienced a number of physical problems, such as back pain for which she received injections, AR 1222, 1224-25; bilateral carpal tunnel release, with physical therapy afterward,  AR 314; intra-articular injections after injuring her left knee, AR 318, 365; a probable right knee medial meniscus tear in 2011, for which she received epidural injections, AR 597, 623, 1227.

Plaintiff had extensive care for her physical problems, including years of chiropractic care for her lumbar and thoracic spine and lower leg, AR 466-555; and physical therapy and water therapy in 2012, AR 1211.  In December 2011, she went to both physical therapy and water therapy after feeling a "pop" in her back.  AR 1219.

In December 2013, plaintiff injured her back and neck jumping out of her work truck when it caught on fire, AR 1219; in 2014, she saw family practitioner, Dr. Mark Attermeier, for wrist, thumb and chronic low back pain, AR 755-57; in April 2014, she saw a neurologist, Dr. David Nye, on Dr. Attermeier's referral, because of increasing pain and numbness in her arms that she attributed to her 2013 accident.  AR 753.  Dr. Nye found her

gait within normal limits, but her range of motion in her neck limited by pain.  Id.

In  May 2014, plaintiff saw Dr. Donald Bodeau, a specialist in occupational health, for her back and leg pain.  AR 748.  He found her reflexes intact in her lower and upper extremities, told her she could work without restrictions, made some adjustments in her pain medications (gabapentin and tramadol), and encouraged her to take out a YMCA membership so that she could continue her fitness program.  AR 749.

On  August 14, 2014, plaintiff retired from the highway department and saw Dr. Bodeau again for back and leg pain.  AR 657.  He found her gait antalgic and her right knee pain worsening and identified L4-5 disc protrusion with back and radicular leg pain.  Id.  He planned to refer her to the YMCA to continue her exercise program and also planned to order an MRI of her right knee.  Id.

On August 17, 2014, plaintiff saw Dr. Andrew Israel, M.D., for an orthopedic evaluation of her right knee, complaining of medial side knee pain and some swelling.  AR 740.  He found that she had moderate to severe degenerative arthritis in that knee and told her he could not recommend any further surgical procedures for it at that time.  Id.  He recommended hydrotherapy programs in a pool, physical therapy, modifications in her activities, anti-inflammatory medications, and cortisone injections.  Id.

In September 2014, plaintiff went to physical therapy on Dr. Israel's referral and reported that her knee pain woke her at night, prevented her from walking more than 20 minutes at 2013 a time, and made it difficult for her to stand and sit at church services, although she could sit for long periods if she had the opportunity to move her leg around in

3

comfortable positions.   AR 735.

Plaintiff continued to see a chiropractor.  AR 578.  On September 22, 2014, she told him she had low back pain on a level of one (mild pain) after weeding around her garage. AR 572.  At a visit two weeks later, she said she had dull neck pain and stiffness after cleaning her house and climbing a stepladder to scrub her walls before painting them.  AR 574.

In March 2015, plaintiff saw Dr. Terry Schiefer, for a spine and neurological surgery consultation, on referral from Dr. Bodeau for her primary complaint of neck pain.  AR 609. Dr. Schiefer reported that plaintiff was walking with a normal gait, capable of walking toe to heel without difficulty, had full strength in her bilateral upper and lower extremities in all major muscle groups, a mildly limited range of motion in her neck, and pain and some tenderness in her neck with palpation.  Id.  He found that plaintiff had no abnormal movement with flexion or extension, some mild degenerative changes throughout, and moderate central canal narrowing at C5-6.  Id.  Dr.  Schiefer noted some bilateral neuroforaminal narrowing, but found the MRI of her cervical spine otherwise unremarkable. AR 609-10.  He recommended six months of physical therapy and potential trigger point injections for her neck tenderness.  AR 610.

In June 2015, plaintiff saw her family practitioner, Dr. Attermeier, and told him her back had not been much of a problem to her.   AR 691. On examination, she had full range of motion of all joints and was ambulating with a steady gait.  AR 690.

In August 2015, plaintiff had an independent medical evaluation for her worker's

compensation claim by Dr. Kevin Kulwicki, a specialist in orthopedic surgery.  AR 1204.
On examination, Dr. Kulwicki found plaintiff's chief complaint to be her right knee pain.
It was his opinion that this pain was not attributable to her escape from the truck fire at the
end of 2013, but to a pre-existing degenerative condition.  AR 1212.  He recommended
treatment with steroid injections, a home exercise program, weight reduction, over-the-
counter anti-inflammatory medication, and no further arthroscopic surgery, which, in his
opinion would not result in any lasting relief.   AR 1213.  It was his opinion that plaintiff
would benefit from permanent restrictions of the right knee, including no repetitive bending,
squatting, stooping, or kneeling.  AR 1214.

Plaintiff had a second independent medical examination in July 2015 for her worker's
compensation claim by Dr. William Monacci, a neurology consultant.  AR 1218-45.  Dr.
Monacci determined that plaintiff had needed no permanent work restrictions once she had
healed from her first work-related injury in December 5, 2011(lifting truck blades) and her
second work-related injury in December 2013 (escaping from her burning truck).

Dr. Bodeau reviewed the two independent examinations in September 2015 and
disagreed with both.  AR 665.  It was his opinion that plaintiff had a work-related disability
as a result of her escape from the burning truck, and he disagreed with Dr. Monacci's
opinion that the only problem resulting from that escape was a cervical strain.  Id.  He also
disagreed with Dr. Kulwicki's opinion that plaintiff's problems were not related to her work
for the county but to her age and weight-related degenerative problems.

In a progress note on February 25, 2015, Dr. Bodeau noted that plaintiff was retired

but no work restrictions were implemented.  AR 723.  In December 2015, in a letter to plaintiff's counsel, Dr. Bodeau assessed plaintiff's overall disability as 12%, which would include multilevel involvement of both discs and bony structures.  He added that the assessment was intended to include "consideration of persistent back pain, radicular leg pain only poorly responsive to ongoing medication use as well as weakness and lack of endurance through the back and legs."  AR 1089.  Dr. Bodeau  thought that plaintiff would require further medical treatment for her condition, including home exercises and a traction unit, as well as further evaluation if her symptoms were to worsen or persist.  AR 666.

Dr. Alena Marozava, an examining physician,  prepared a disability report on plaintiff in April 2016.  AR 1098.  She noted plaintiff's reports of having had neck pain since she had jumped out of the burning truck in December 2013, and suffering from chronic persistent neck pain.  Id.  She noted also that plaintiff's pain was aggravated by sitting for long periods of time, watching television, or reaching overhead, and that she had back pain as well, particularly in her lower back, and in her knee dating from January 2010.  AR 1098-1109.  Plaintiff told the doctor she could still do her own housekeeping, shop for groceries twice a week, do the laundry twice a week, cook every day, wash dishes, and drive.  Id.  The doctor observed that plaintiff had a normal gait, including tandem walk, tip-toes and heel walk, and a supple neck.  AR 1101-02.

Dr. Marozava concluded that plaintiff had moderate deficits in sitting and standing (needing movement after 20 minutes of either sitting, standing, or walking); an inability to squat because of left knee surgery; and moderate deficits of lifting and carrying.  AR 1103.

She found no deficits in plaintiff's bending, twisting, stooping or handling objects, but thought plaintiff would have difficulty with ladders and stairs because of a lack of steadiness. Id. She also found that plaintiff had a supple neck, but some discomfort on palpation; AR 1101; mild restriction in the range of motion in her spine; normal range of motion in her back; grossly normal appearing knees with range of motion of 135 degrees in flexion, normal flexion strength. AR 1102.

In July 2018, plaintiff saw Dr. Kristina Schuldt for primary care. Dr. Schuldt examined plaintiff and, among other findings, determined that she had normal range of motion in her neck; her neck was supple; and the musculoskeletal finding was also "normal range of motion." AR 1161.

In a function report filed with the Social Security Administration and dated January 30, 2016, plaintiff said that she cared for three dogs, feeding them and cleaning out their pen, helped by her husband and a grandson. AR 229. She also said that she had both a vegetable and a flower garden, enjoyed reading, playing cards, watching TV, spending time with her family at their monthly family gatherings, and enjoyed her responsibility as superintendent of the Sunday school at her church. AR 232. She added that she had trouble sleeping and was often awakened by feelings of pain. AR 235.

Two non-examining state agency medical consultants reviewed plaintiff's records. Dr. George Walcott assessed plaintiff's work limitations at the medium exertional level with lifting of 50 pounds occasionally and 20 pounds frequently, with standing/walking for six hours and sitting for six hours with no additional postural limitations, AR 89-90. He said

that plaintiff had mild to moderate degenerative disc disease and arthritis in her knees; her gait was normal and, according to physical therapy records, range of motion in her knees was full and pain free, but she should be restricted from lifting heavy weights.  AR 89.  (The ALJ gave this assessment some weight but disagreed with the idea that plaintiff could lift no more than 20 pounds on a frequent basis; in his opinion, she could lift 25 pounds on a frequent basis.)

Dr. Pat Chan reviewed plaintiff's records on reconsideration on September 9, 2016, and agreed that plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally, that is, for cumulatively 1/3 or less of an eight hour day; could stand or walk for more than six hours on a sustained basis; and sit for about six hours in an eight hour work day, with push and pull the same as lift and carry.  AR 102.  He agreed also that plaintiff had postural limitations:  she could handle frequent climbing of ramps and stairs and frequent stooping with occasional climbing of ladders, ropes, or scaffolds, and occasional kneeling, crouching and crawling.  AR 101-02.  In Dr. Chan's opinion, plaintiff had full range of motion, normal alignment of her spine and ambulation with a steady gait, AR 103, with only moderate degenerative disc disease of the knees.  AR 102.  Her complaints about the pain in her knees were similar to those she had expressed long before she retired, yet, during that time, she was still able to perform her work at the heavy level.  Id.

## B. Administrative Hearing

At an administrative hearing held on March 13, 2019, plaintiff testified that she had

worked for Eau Claire County for 37 years and that she had waited until her retirement date to claim that she was unable to work.  AR 52.  In response to questions put to her by her counsel, she said that Dr. Bodeau had wanted to impose restrictions on her before she retired, but she had told him not to.  AR 54.  She testified that when she went back to Dr. Bodeau within two weeks of her retirement in August 2014, she told him she could not lift as much as 25 pounds without incurring pain later, could do occasional bending (up to one-third of the day), could kneel, squat and crouch only five to 10 percent of the day, could not twist or bend one-third of the day, could occasionally reach above her shoulder and out in front of herself, and could not stand or walk one-third of a day on a regular basis.  AR 55-57.  She also said rotating her neck caused a pinching feeling in her neck.  AR 58.

Plaintiff also testified that after her truck accident in December 2013, she had problems in her hands that had worsened.  When asked what a typical day was like for her, she said she cooked, baked, did laundry, cleaned her house and loaded and unloaded the dishwasher.  AR 60.  She drove to church, to shop and to take the three grandchildren, ages 12, 14, and 16, who lived with her and her husband, to their confirmation classes.  AR 61.  She took some medication each day:  900 milligrams of gabapentin a day, 800 milligrams of ibuprofen, three times a day, and 50 milligrams of tramadol three times a day, as well as medication for high blood pressure.  Id.  On rare occasions, she also took a muscle relaxer, but found it made her very tired and groggy.  Id.  She testified that she was careful in the way she moved her neck, because she had pain in her neck throughout the whole day.  AR 62.  She also had tingling in her fingers if she used a keyboard for too long, AR 63, and pain

in her lower back and in her knees if she pushed or pulled something, and was sometimes required to lie down for an hour.  AR 65-66.

The vocational expert called by the ALJ stated that because plaintiff's duties in her work with the county included driving a dump track, seal coating roads, putting in culverts, jackhammering, and performing other highway maintenance, the job would be classified for Social Security Administration purposes as medium, SVP 3, semiskilled, performed at the heavy exertion level.  AR 69.  The vocational expert testified that a person with the residual functional capacity proposed by the ALJ could not perform plaintiff's prior work because it required frequent kneeling, AR 70, but such a person could perform the jobs of laundry laborer, cook helper and bagger, all of which were classified as medium, SVP 2.  Id.

The vocational expert then testified that if a person could not perform a job that required her to climb ladders, ropes, and scaffolds, but could perform a job requiring her to climb ramps and stairs only occasionally and only occasionally stoop, kneel or crouch, and never crawl, the person would not be able to perform all of the jobs the expert had listed previously,  but would still be able to do the job of laundry laborer, as well as the additional jobs of merchandise deliverer and general laborer, both of which are classified as medium and SVP and 2.  AR 70-71.  The expert added that the person could not do those jobs if she were limited to only occasionally lifting 25 pounds, occasional bending, less than occasional kneeling, crouching only occasionally reaching overhead bilaterally, reaching in front, reaching higher than shoulder height, stand or walk as well as sit, in need of changing positions every half hour, and handling or fingering only occasionally.  AR 72-73.

10

## C. Administrative Law Judge's Decision

Following the five-step sequential evaluation of disability set out by the regulations, 20 C.F.R. § 416.920, the ALJ found at step one that plaintiff met the insured status requirement of the Social Security Act through December 31, 2019, and had not engaged in substantial gainful activity since August 4, 2014, the alleged onset date.  At steps two and three, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the cervical spine; degenerative joint disease of the bilateral knees status post arthroscopic debridement with partial meniscectomy of the right knee; degenerative joint disease of the left midfoot; and obesity, but that none of these impairments met or equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subp. P., App. 1.

The ALJ reviewed evidence that plaintiff had had carpal tunnel release and a right ulnar nerve endoscopic decompression in 2010 but neither of these procedures had hindered her ability to work in the following years.  AR 24.  After her jump from the burning truck in 2013, examinations showed that she had full bilateral shoulder, elbow and wrist range of motion, an intact neurologic exam of the digits bilaterally, and an x-ray of her left hand that was within normal limits.  Id.  Later, plaintiff had surgery for trigger finger problems in October 2015, with good results.  Id.

Plaintiff also had a medically determinable mental impairment of adjustment disorder with anxious mood and generalized anxiety disorder, but the ALJ determined that this impairment did not cause her more than minimal limitations in her ability to perform basic

mental work activities and thus was non-severe. AR 24-25. The ALJ noted that plaintiff felt better once she was prescribed Wellbutrin XL daily, and had normal mental status findings. AR 25. Plaintiff had hypertension, but it was well-controlled. Id.

Although plaintiff is not basing her claim for benefits on any alleged mental problems, the ALJ considered the four broad areas of mental functioning in the disability regulations and in the Listing of Impairments. She concluded that plaintiff did not have any limitation in any of the four functional areas of mental functioning known as the "paragraph B criteria.") AR 25-26.

Before considering step four, an ALJ is required to determine the plaintiff's residual functional capacity, that is, her ability to do physical and mental work activities on a sustained basis despite limitations from any impairments. AR 22. In making this determination, the ALJ must consider all of the plaintiff's impairments, including those that are not severe. 20 C.F.R. § 404. 1520(c) and 404.1545 and SSR 96-8p. After the ALJ did this in plaintiff's case, she concluded at step four that plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with only occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, and crouching but no crawling; frequently push/pull bilaterally; frequent lateral rotation of the head/neck; frequent handling and fingering bilaterally; avoiding moving mechanical parts and unprotected heights and an inability to perform production rate or pace work such as assembly line work. AR 27.

The ALJ considered plaintiff's reports of pain in her low back, neck, left foot arthritis,

bilateral shoulder and bilateral knee problems, left leg pain and numbness, AR 28, and concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that her descriptions of her symptoms were not entirely consistent with the medical evidence.  For instance, from at least 2008, plaintiff had had back and leg pain; she had knee pain from 2010; and in the same year, she had a work-related injury to her left knee.  In January 2011, she had left arthroscopic knee surgery, medial menisectomy and generalized debridement.  AR 28.  MRI studies of her lumbar spine from October 7, 2011 showed multiple levels of degenerative disc disease in the spine.  AR 604.  Nevertheless, she continued to work at a physically demanding job.

At step five, the ALJ determined that plaintiff was unable to perform any of her past relevant work.  AR 39.  She was 55 years old, had at least a high school education and was able to communicate in English.  Id.  Given plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform.  20 C.F.R. § 404.1569 and 404.1569(a).  (The ALJ explained that she did not have to determine the transferability of job skills because the use of the Medical-Vocational Rules as a framework supported a finding that plaintiff was not disabled whether she had transferable job skills or not.  20 C.F.R. Part 404, Subpt. P, App. 2 and SSR 82-4.)

OPINION

Plaintiff contends that the ALJ erred by discounting her subjective symptoms and

13

failing to give adequate weight to the medical opinions of Dr. Bodeau and Dr. Marozava. In reviewing the ALJ's decision with respect to these arguments, I must determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).

## A.  Plaintiff's Subjective Symptoms

The ALJ explained adequately why she discounted plaintiff's own account of her limitations.  First, plaintiff worked at a heavy exertional level until the day she became eligible for retirement, despite having been treated for back pain, leg pain and fatigue prior to her retirement.  AR 28.  Plaintiff had not tried to work anywhere since retiring, her physical impairments were not significantly worse since retirement and the ALJ found it unlikely that plaintiff could not work at any  level shortly after her retirement.  Wright v. Berryhill, 17-cv-860-slc, 2018 WL 6587233, *3 (W.D. Wis. Dec. 14, 2018) (fact that social security applicant had been able to work full time for number of years despite having frequent migraine headaches undercut her claim that the headaches made her unable to work in 2014).

14

Second, plaintiff has had only conservative treatment for her medical problems since retiring: medication, injections, and orthotics. AR 29. See also Caldarulo v. Bowen, 857 F.2d 410, 413-14 (7th Cir. 1988) (painkillers and therapy are considered conservative treatment); Olsen v. Colvin, 551 F. App'x 868, 875 (7th Cir. 2014) (epidural steroids have been characterized as "conservative treatment"); Burnam v. Colvin, 525 F. App'x 461, 464-65 (7th Cir. 2013) (conservative treatment includes physical therapy and epidural injections). (Plaintiff does not allege that her treatment for trigger figure release, De Quervain's tenosynovitis, or carpal tunnel syndrome interferes with her ability to work, so there is no reason to consider that treatment.) Plaintiff argues that her conditions are chronic and degenerative and that although she is not a candidate for surgery now, she will be in the future. It is true that, in and of itself, conservative treatment does not mean that a person has no disability. However, conservative treatment is a fair ground for consideration when determining disability. Olsen, 551 F. App'x at 875 (upholding ALJ's decision that plaintiff's conservative medical treatment did not support her claimed inability to work). This is particularly true here, where plaintiff has been following the same pain medication regimen for a significant period of time, her condition has not worsened to the point she needs more extreme interventions, and the medical records do not show a significant increase in impairment or loss of functioning since retirement. AR 35.

Third, plaintiff's conservative treatment resulted in a reduction in her pain and an increase in her ability to move. She reported a fifty-percent decrease in her neck pain after she had had physical therapy. AR 32. (The record shows that plaintiff's improvement

continued despite her failure to show up for all of her physical therapy sessions and her cancellation of seven other sessions.)  In addition, she reported that her pain medication regimen was effective and kept her functional, chiropractic visits had helped, and that she had to take Vicodin and muscle relaxers only sparingly. AR 32, 34.

Fourth, despite plaintiff's degenerative changes identified in the record, doctors and physical therapists observed many instances in which plaintiff displayed normal functioning, such as normal gait, full range of motion, full strength, normal reflexes, normal knees and no neck tenderness, or at least stable functioning.  As just one example, the record contains seven references to plaintiff's normal gait:  AR 691, 701, 717, 1102, 1117, 1236, and 1276.

Fifth, as the person responsible for three minor grandsons, with all the cooking, baking, cleaning, driving, bed making, vacuuming, and laundry that involves, plaintiff has demonstrated that she can continue to work, albeit at a lower level of exertion than required for her former job with the county.  She also gardens, which is significant, because it is something that does not have to be done, unlike cooking, cleaning and laundry chores. Moreover, it is an activity that involves considerable bending, stooping, kneeling, and even squatting.  The ALJ acknowledged that plaintiff reported resting after her activities, and she also reported that her numerous activities caused her pain in her hands, low back, neck and knees.  AR 28, 35.  But the ALJ pointed out that there was no evidence suggesting that plaintiff could not engage in these activities without rest breaks, because she was able to perform heavy work prior to retirement.  AR 35.  In addition, plaintiff's argument that she had help from her coworkers and could lie down at her job, AR 58, is not sufficient to

undermine the ALJ's decision, as there is no evidence about how often plaintiff had help, what type of help it was, or how often she needed to lie down.

For all of these reasons, I conclude that the ALJ explained adequately why she discounted plaintiff's subjective symptoms.

### B.  Medical Opinions

Plaintiff argues that the ALJ should have given more weight to the opinions of her treating physician, Dr. Bodeau, and the examining physician, Dr. Marozava.  However, the ALJ explained adequately why she discounted their opinions.  Dr. Bodeau provided an opinion giving plaintiff significant physical limitations starting the date of her retirement. However, Dr. Bodeau's own treatment notes from 2015, several months after plaintiff's retirement, state that plaintiff was available for unrestricted activity.  AR 36.  The ALJ also noted that Dr. Bodeau's opinion was inconsistent with other evidence in the record, including the opinions of consulting physicians, plaintiff's daily activities and her conservative treatment.  AR 36-37.

As for Dr. Marozava, the ALJ's residual functional capacity assessment included limitations that were both more and less severe than those suggested by Marozava.  The ALJ adequately explained her reasoning.  The ALJ noted that Marozava's opinion relating to plaintiff's standing and walking limitations were not supported by objective evidence, as numerous medical records showed that plaintiff had a normal gait, good strength and good engage in toe to heel walking.  AR 37-38.  The ALJ also explained adequately why she found

the consultative examiners' opinions to be more persuasive.  The ALJ's explanation is thorough and sufficient.  20 C.F.R. 404. 1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").

In sum, the ALJ's decision is supported by substantial evidence, that is, "sufficient evidence to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154.  In this case, there is substantial evidence that, although plaintiff has physical problems, they are not so serious that she cannot perform work at a medium level, with specified adjustments

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED, and plaintiff Debra Prill's appeal is DENIED.  The Clerk of Court is directed to enter judgment in favor of defendant and close this case.

Entered this 15th day of January, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

18